Filed
File Date: 4/28/2020 9:48 AM
Rockingham Superior Court
E-Filed Document

THE STATE OF NEW HAMPSHIRE
SUPERIOR COURT

ROCKINGHAM, SS                 DOCKET NO.: 218-2020-CV-00544

JOSEPH CLANCEY
39 Horseshoe Road
Windham, NH 03087

v.

NICE SYSTEMS, INC.
Waterfront Corporate Center III,
221 River Street,
Hoboken, New Jersey 07030

**JURY TRIAL REQUESTED**

**COMPLAINT**

### I. NATURE OF THE ACTION

1. This action is brought by Joseph Clancey against NICE Systems, Inc. ("NICE") for wrongful termination, the unlawful withholding and nonpayment of wages owed to the Plaintiff in violation of NH RSA 275:48, et. al, retaliation in violation of Title VII of the Civil Rights Act of 1964 and NH RSA 354-A, and violation of the New Hampshire Whistleblowers' Protection Act pursuant to NH RSA 275-E.

### II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to NH RSA 491:7.

3. Venue is proper because the Plaintiff resides in Windham, NH, which is situated in Rockingham County. Additionally, the Plaintiff was primarily working remotely from his home address within Rockingham County during the period in which the events alleged in this complaint occurred.

1

### III. PARTIES

4. The Plaintiff is an adult New Hampshire resident with an address of 39 Horseshoe Road, Windham, NH 03087.

5. The Defendant, NICE Systems, Inc., is a domestic for-profit corporation incorporated in the State of Delaware and headquartered at the address of Waterfront Corporate Center III, 221 River Street, Hoboken, New Jersey 07030. NICE employs remote employees working offsite throughout the United States.

### IV. FACTS

6. Plaintiff Joseph Clancey began working for NICE in approximately June of 2018. He was hired for the position of Solutions Sales Executive.

7. Mr. Clancey worked for NICE remotely from his home office located at 39 Horseshoe Road, Windham, NH 03087.

8. At the time of his termination, on or about May 1, 2019, the Plaintiff's base salary was $120,000.00 per year.

9. The Plaintiff was also compensated through various incentive and commission plans with the company. Mr. Clancey received multiple job benefits including, but not limited to, health insurance, dental insurance, optical insurance, disability insurance, retirement plan and paid time off.

10. Mr. Clancey performed his job well. At the time of his termination, Mr. Clancey had already achieved more than 60% of his target sales revenue for the 2019 fiscal year.

11. When Mr. Clancey first started with NICE, his supervisor was a Vice President of Regional Sales by the name of Chip Harder. Mr. Clancey had a productive and professional

relationship with Mr. Harder and, under his supervision, Mr. Clancey quickly excelled in his position.

12. In approximately January of 2019, Mr. Harder was replaced by a newly-promoted Vice President of Sales by the name of Allen Paige. At around the same time, Mr. Clancey assumed the sales territory held by Mr. Paige prior to Mr. Paige's promotion.

13. Shortly after Mr. Paige took over as Mr. Clancey's supervisor, the two attended a conference call demo with the company Dell. Tom Cole, another NICE employee, was also in attendance.

14. During the demo, Mr. Paige began making inappropriate sexual and discriminatory comments about a new NICE employee. More specifically, Mr. Paige made comments such as "he looks like a gay porn star" and "I wonder if he likes the rod."

15. Mr. Paige soon realized that employees of Dell had already entered the conference call. Said Dell employees seemed taken back by what Mr. Paige had said.

16. After the meeting, Mr. Clancey expressed to Mr. Paige that he was very uncomfortable by the inappropriate sexual comments Mr. Paige made about the new subordinate employee. Mr. Paige was dismissive and minimized the inappropriate nature of his actions.

17. From that point forward, Mr. Paige was less friendly with Mr. Clancey and began nitpicking him.

18. On or about the last week of February, 2019, Mr. Clancey and Mr. Paige were working together on a large deal with the company Quicken Loans ("Quicken"). Seemingly out of nowhere, Mr. Paige began commenting to Mr. Clancey about a female employee of Quicken, saying outrageous sexual comments such as "I bet I could F*** her all night long" and "I would make her come real good."

19. Mr. Clancey again felt very uncomfortable by Mr. Paige's comments and communicated to him that his statements were inappropriate. Mr. Paige again was dismissive of Mr. Clancey's concerns.

20. In approximately the second week of March, 2019, Mr. Clancey and Mr. Paige attended another meeting together regarding the Quicken deal. During their meeting, Mr. Paige took it upon himself to share with Mr. Clancey that he had met a woman on the internet. Mr. Paige then stated: "I am so tired from f***ing her all night." He went on to say "I was f***ing her like a real man" and told Mr. Clancey that he sweat so much during the sexual encounter that he lost five pounds. At that point, Mr. Clancey once again told Mr. Paige that he was uncomfortable and Mr. Paige's comments were very inappropriate.

21. From that point forward, Mr. Paige ramped up the nitpicking and began complaining to Mr. Clancey about innocuous matters, such as updating Salesforce, via email. He was also growing less and less friendly toward Mr. Clancey.

22. On or about April 10, 2019, Mr. Clancey and Mr. Paige were having a one-on-one meeting. During the meeting, Mr. Paige told Mr. Clancey that he was moving to Colorado and stated: "I am already on the hunt for new young p**sy."

23. At that point, Mr. Clancey told Mr. Paige that if he made any further sexual comments, he would complain to human resources.

24. Approximately three weeks after Mr. Clancey told Mr. Paige that he would report his inappropriate comments and remarks to human resources if he did not stop, Mr. Paige terminated Mr. Clancey's employment.

25. Mr. Paige claimed he was terminating Mr. Clancey for performance issues. The alleged performance issues were completely unfounded and fatally contradicted by Mr. Clancey's sales numbers. Mr. Clancey was on track to far exceed his target sales revenue goal for 2019.

26. At the time of Mr. Clancey's termination, the deal with Quicken that he had been working on was completed and booked, but because it was the biggest cloud-based deal in the history of NICE, it was being subjected to a secondary review. In accordance with the NICE Incentive Plan, Mr. Clancey was entitled to the total sum of $36,913.85 for the Quicken deal.

27. Rather than pay the amount due, NICE paid Mr. Clancey the lesser sum of $10,703.08, claiming that Mr. Clancey had not yet earned $26,210.77 because the deal went to secondary review and allegedly had not been booked at the time of his termination.

28. Mr. Clancey had already completed all of his work on the Quicken account at the time of his departure. Mr. Clancey was simply waiting on NICE to finish its part. Therefore, he is clearly owed the commission for the work performed.

29. Due to the Defendant's unlawful and retaliatory termination of Mr. Clancey, and its unlawful withholding of commission wages he was due, the Plaintiff has suffered significant damages. Said damages include, but are not limited to, lost wages, lost benefits, emotional distress, humiliation, reputational harm, inconvenience, lost earning capacity, loss of life enjoyment and attorney's fees and costs. The Plaintiff is also entitled to enhanced compensatory damages based upon the wanton, malicious and oppressive nature of the Defendant's conduct. The Plaintiff also claims punitive damages, pursuant to Title VII of the Civil Rights Act of 1964, because the Defendant acted with malice and/or with reckless indifference to the Plaintiff's federally-protected right to be free from retaliation based upon the Plaintiff's good-faith report of what he believed

was sexual harassment. Additionally, the Plaintiff seeks liquidated damages in an amount equal to the total of wages owed pursuant to NH RSA 275, including 275:44, IV, 275:48 and 275:53.

## COUNT I
## WRONGFUL TERMINATION

30. The Plaintiff repeats and realleges each allegation contained in the paragraphs above.

31. Public policy and both State and Federal law supported Mr. Clancey in opposing the graphic and inappropriate sexual comments made by Mr. Paige.

32. Mr. Clancey had a well-grounded and reasonable belief that Mr. Paige's comments were discriminatory and unlawful. Additionally, as evidenced by current popular culture and the #MeToo movement, society no longer has tolerance for inappropriate sexual comments in the workplace. Public policy supports opposing such behavior.

33. In retaliation for Mr. Clancey's repeated opposition and refusal to partake in Mr. Paige's outrageous sexual commentary, Mr. Clancey was terminated from his employment.

34. NICE is therefore liable for wrongful termination.

35. As a direct and proximate result of the Defendant's wrongful termination of the Plaintiff, the Plaintiff has suffered and continues to suffer damages including, without limitation, lost wages, lost benefits, emotional distress, humiliation, reputational harm, inconvenience, lost earning capacity, loss of life enjoyment and attorney's fees and costs. The Plaintiff is also entitled to enhanced compensatory damages based on the wanton, malicious and oppressive nature of the Defendant's wrongful termination of the Plaintiff.

## COUNT II
## UNLAWFUL WITHHOLDING AND NON-PAYMENT OF WAGES IN VIOLATION OF NH RSA 275

36. The Plaintiff repeats and realleges each allegation contained in the paragraphs above.

37. At the time of Mr. Clancey's termination, he was owed no less than $36,913.85 in accordance with the NICE Incentive Plan.

38. Rather than pay the amount due, NICE paid Mr. Clancey the lesser sum of $10,703.08, falsely claiming that Mr. Clancey had not yet earned $26,210.77 because the Quicken deal was in review and allegedly had not been booked.

39. At the time of Mr. Clancey's termination, he had completed all tasks necessary to earn his commission. He was simply waiting for NICE to finish its part.

40. To deprive Mr. Clancey the full amount of the commission owed to him for the work he completed, exclusively due to the fact that the Defendant had the discretion to hold up the deal, is entirely unreasonable and a violation of the implied covenant of good faith and fair dealing.

41. As per NH RSA 275:42, the term "wages" includes commission for labor or services rendered by an employee.

42. Mr. Clancey worked on the Quicken deal diligently for months and completed all tasks pertaining to his portion of the deal.

43. Indeed, the NICE Enterprise Resource Planning ("ERP") Computer System showed the Quicken order as booked.

44. NICE made the decision to send the Quicken transaction for a secondary review.

45. This was entirely out of Mr. Clancey's control and has no bearing on his entitlement to the full commission, particularly because the Quicken deal successfully closed after the company terminated Mr. Clancey's employment.

46. NICE's ongoing and willful withholding of Mr. Clancey's commission wages is in clear violation of NH RSA 275:44 and 275:48.

47. The Defendant is liable for all wages owed to the Plaintiff that it has withheld and continues to unlawfully withhold. Additionally, because the Defendant's withholding of Mr. Clancey's wages is willful, the Defendant is liable for an additional amount in liquidated damages equal to the total of all wages owed to the Plaintiff, pursuant to NH RSA 275:44, IV. The Defendant is additionally liable for the Plaintiff's attorney's fees and costs pursuant to NH RSA 275:53, III.

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII AND NH RSA 354-A

48. The Plaintiff repeats and realleges each allegation contained in the paragraphs above.

49. Mr. Clancey engaged in the protected conduct of reporting to his supervisor, VP Paige, that Mr. Paige's sexual comments were inappropriate. Mr. Clancey further engaged in protected conduct by refusing to participate in the inappropriate sexual commentary and threatening to report the behavior to human resources if it did not stop.

50. Mr. Clancey believed reasonably and in good faith that Mr. Paige's behavior amounted to sexual harassment.

51. In malicious retaliation for Mr. Clancey's protected conduct, Mr. Paige terminated his employment, three weeks after Mr. Clancey said he would report Mr. Paige to human resources.

52. The Defendant's stated reason for the termination is transparently pretextual.

53. The Defendant is therefore liable for retaliation in violation of Title VII of the Civil Rights Act of 1964 and NH RSA 354-A, and the Plaintiff is entitled to damages including, but not limited to: lost wages, lost benefits, emotional distress, humiliation, reputational harm,

inconvenience, lost earning capacity, loss of life enjoyment and attorney's fees and costs. The Plaintiff is also entitled to enhanced compensatory damages based upon the wanton, malicious and oppressive nature of the Defendant's conduct, as defined by NH RSA 354-A:21-a. The Plaintiff also claims punitive damages because the Defendant acted with malice and/or with reckless indifference to the Plaintiff's federally-protected right to be free from retaliation based upon the Plaintiff's good-faith report of what he believed was sexual harassment.

## COUNT IV
## VIOLATION OF WHISTLEBLOWER'S PROTECTION ACT (NH RSA 275-E)

54. The Plaintiff repeats and realleges each allegation contained in the paragraphs above.

55. State law protects any employee from retaliation on the basis that he reported, objected to, or refused to participate in any activity that the employee, in good faith, believed was a violation of law.

56. Mr. Clancey believed in good faith that Mr. Paige's inappropriate sexual remarks and commentary amounted to unlawful sexual harassment.

57. Mr. Clancey refused to engage in and objected to Mr. Paige's behavior. He also reported to Mr. Paige, who was Mr. Clancey's immediate supervisor, that his conduct was inappropriate and threatened to report him to human resources if it did not stop.

58. By terminating the Plaintiff for objecting to, refusing to participate in, and reporting what he reasonably believed was sexual harassment, the Defendant is liable for violating the New Hampshire Whistleblower's Protection Act pursuant to NH RSA 275-E.

59. As a direct and proximate result of Defendant's violation of RSA 275-E, the Plaintiff has suffered and continues to suffer damages including, without limitation, lost wages, lost benefits, emotional distress, humiliation, reputational harm, inconvenience, lost earning

capacity, loss of life enjoyment and attorney's fees and costs. The Plaintiff is also entitled to enhanced compensatory damages based on the wanton, malicious and oppressive nature of the Defendant's conduct.

**WHEREFORE,** the Plaintiff, Joseph Clancey, respectfully prays this Honorable Court:

    A.    Schedule this matter for trial by jury;

    B.    Find the Defendant liable for each count alleged herein;

    C.    Award the Plaintiff all damages to which he is entitled, including enhanced compensatory damages, punitive damages and liquidated damages;

    D.    Award the Plaintiff his reasonable attorney's fees and costs; and

    E.    Grant such other and further relief as is just and equitable.

> Respectfully submitted,
> JOSEPH CLANCEY,
> By his attorneys,
> *BACKUS, MEYER & BRANCH, LLP*

Date: April 28, 2020    By:    /s/ Sean R. List    .
    Sean R. List, NH Bar #266711
    116 Lowell Street
    Manchester, NH 03104
    (603) 668-7272
    slist@backusmeyer.com